# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# JACKSONVILLE DIVISION

MATTHEW FRIEDSON,

    Plaintiff,

v.                                                                  Case No. 3:19-cv-237-J-32PDB

SHERIFF DAVID SHOAR and
DEPUTY RYAN WALLACE,

    Defendants.

## **O R D E R**

This is a false arrest and disability discrimination case brought by a deaf driver against the Sheriff and his deputy. The case is before the Court on Defendant Sheriff David Shoar's Motion to Dismiss Plaintiff's Complaint (Doc. 9), to which Plaintiff Matthew Friedson filed a response (Doc. 16).

## I.    BACKGROUND[1]

On February 27, 2015, Deputy Ryan Wallace, a deputy in the St. Johns County Sheriff's Department, pulled over Matthew Friedson, who is deaf, for the traffic violation of following too closely. (Doc. 1 ¶ 10). Deputy Wallace

---

[1] The Background facts are drawn from the allegations of the complaint, (Doc. 1), and must, for purposes of the motion to dismiss, be assumed to be true.

approached Friedson's vehicle with his gun pointed at Friedson and tried unsuccessfully to open the car door. (Id. ¶¶ 10-11). Friedson gestured that he was deaf and would either have to write or use sign language to communicate.[2] (Id. ¶ 12). Friedson and Deputy Wallace drove to a nearby parking lot where Friedson was planning to meet his family, who are hearing. (Id. ¶ 12).

At the parking lot, Friedson gave Deputy Wallace his driver's license and his attorney's business card. (Id. ¶ 13). Friedson's children were present. (Id. ¶ 14). Deputy Wallace motioned for Friedson to exit his vehicle, and as Friedson did so, Deputy Wallace threw Friedson to the ground, handcuffed him, and placed him in the back of the patrol car. (Id. ¶ 15). Friedson alleges he did not know what was going on or why he was being arrested. (Id.).

Later, Deputy Gene Tolbert arrived at the scene. Friedson was removed from the patrol car, given a citation for following too closely, and permitted to leave. (Doc. 1 ¶ 16).

On February 25, 2019, Friedson filed a six-count complaint against the Sheriff and Deputy Wallace, alleging: (1) a 42 U.S.C. § 1983 claim for false arrest against Deputy Wallace (Count I); (2) an Americans With Disabilities Act ("ADA") claim against the Sheriff (Count II);[3] (3) a Rehabilitation Act ("RA")

---

[2] In the ADA claim (Count II), Friedson alleges that he demanded an interpreter in writing. (Doc. 1 ¶ 30).

[3] An ADA plaintiff may proceed on theories of intentional discrimination, disparate treatment, or failure to make reasonable accommodations. See Schwarz v.

2

claim against the Sheriff (Count III); (4) a § 1983 claim for failure to train against the Sheriff (Count IV); (5) a state law claim for false arrest against Deputy Wallace (Count V); and (6) a state law claim for false arrest against the Sheriff (Count VI). (Doc. 1). Deputy Wallace answered. (Doc. 10). The Sheriff filed a motion to dismiss Counts II, III, and IV, and any claims brought against him in his individual capacity. (Doc. 9). Friedson filed a response in opposition. (Doc. 16).

## II. ANALYSIS

### A. ADA and RA claims (Counts II and III)[4]

The ADA was enacted "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities," and "to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities." 42 U.S.C. §§ 12101(b)(1)–(2). To state a Title II claim under the ADA, a plaintiff generally must prove (1) that he is a qualified individual with a disability; (2) that he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the

---

City of Treasure Island, 544 F.3d 1201, 1212 n.6 (11th Cir. 2008). Here, Friedson states his claim is for failure to make reasonable accommodations. (Doc. 16 at 3).

[4] "With the exception of its federal funding requirement, the RA uses the same standards as the ADA, and therefore, cases interpreting either are applicable and interchangeable." Badillo v. Thorpe, 158 F. App'x 208, 214 (11th Cir. 2005) (citing Cash v. Smith, 231 F.3d 1301, 1305 & n.2 (11th Cir. 2000)).

3

public entity; and (3) that the exclusion, denial of benefit, or discrimination was by reason of the plaintiff's disability. Shotz v. Cates, 256 F.3d 1077, 1079 (11th Cir. 2001).

Police conduct during an arrest of a disabled person is subject to the parameters of the ADA. Bircoll v. Miami–Dade Cty., 480 F.3d 1072, 1084–85 (11th Cir. 2007). Under the ADA's implementing regulations, public entities shall furnish auxiliary aids, including qualified interpreters, where necessary to afford disabled persons equal opportunity. 28 C.F.R. § 35.160(b)(1). However, "[t]he ADA's 'reasonable modification' principle . . . does not require a public entity to employ any and all means to make auxiliary aids and services accessible to persons with disabilities, but only to make 'reasonable modifications' that would not fundamentally alter the nature of the service or activity of the public entity or impose an undue burden." Bircoll, 480 F.3d at 1082 (quoting Tennessee v. Lane, 541 U.S. 509, 531–32 (2004)). Therefore, the "question is whether, given criminal activity and safety concerns, any modification of police procedures is reasonable before the police physically arrest a criminal suspect, secure the scene, and ensure that there is no threat to the public or officer's safety." Id. at 1085. In Title II cases, the reasonable modification inquiry is highly fact-specific. The Eleventh Circuit notes that "terms like reasonable are relative to the particular circumstances of the case . . . [and] must be decided case-by-case . . . ." Id.

4

The Sheriff avers that Friedson has failed to allege facts to support any of the three elements of an ADA discrimination claim. (Doc. 9 at 3-5). However, the complaint sufficiently states ADA and RA claims. First, Friedson is a qualified individual with a disability, as he is deaf. (Doc. 1 ¶ 9). Next, he must allege that he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity. The Sheriff challenges the failure to define the programs, services, or activities Friedson was denied. (Doc. 9 at 3-4). However, because Friedson can still state an ADA claim under the final clause of Title II—that he was subjected to discrimination by a public entity, the police, by reason of his disability—he need not tie his claim directly to the services or programs of the public entity. See Bircoll, 480 F.3d. at 1084-85. Friedson alleges that he "made specific demands in writing" for a "qualified interpreter and/or a deputy trained to deal with hearing impaired individuals," but was denied these accommodations. (Id. ¶¶ 29-30; see also id. ¶¶ 37-38). Thus, he has alleged that the discriminatory failure to accommodate was by reason of his disability—his deafness.

Whether Deputy Wallace's failure to obtain an interpreter or other accommodation for Friedson was reasonable under the circumstances cannot be determined on a motion to dismiss; such an inquiry is more appropriate for the summary judgment stage of this case. Thus, viewing the facts in the light most

favorable to Friedson, the Court finds that he has sufficiently pled facts stating that he was discriminated against on the basis of his disability.

While Friedson has substantively stated ADA and RA claims, the Court sua sponte questions the sufficiency of these claims with respect to his damages request. "To prevail on a claim for compensatory damages under either the RA or the ADA, a plaintiff must show that a defendant violated his rights under the statutes and did so with discriminatory intent."[5] McCullum, 768 F.3d at 1146-47; Liese v. Indian River Cty. Hosp. Dist., 701 F.3d 334, 342 (11th Cir. 2012). A plaintiff may prove discriminatory intent by showing that a defendant was deliberately indifferent to his statutory rights. Liese, 701 F.3d at 345.

Here, Friedson pled his damages claims at the end of the complaint and separately from the individual counts, making it unclear which damages request is associated with which count.[6] (Doc. 1 ¶¶ 61-62). Viewing the damages allegations in the light most favorable to Friedson, he has requested compensatory damages on all counts, but he has failed to sufficiently allege discriminatory intent in his RA claim. (Id. ¶¶ 62(a)-(b)). By contrast, he appears

---

[5] "Where a plaintiff is not seeking compensatory damages, discriminatory intent is not required. In that situation, a showing that the auxiliary aids he received to assist him in communicating were not sufficient to provide him with an equal opportunity to benefit from the healthcare provider's treatment is enough by itself to establish a violation of both the RA and ADA." McCullum v. Orlando Reg'l Healthcare Sys., Inc., 768 F.3d 1135, 1147 n.8 (11th Cir. 2014).

[6] One point is clear: Friedson specifies that the punitive damages requests only apply to Counts I and IV. (Doc. 1 ¶ 62(c)).

6

to have alleged discriminatory intent in his ADA claim. (Doc. 1 ¶ 34) ("By its discriminatory practices, Defendant, Sheriff, acted intentionally, maliciously or with reckless indifference."). However, it is not clear from the face of the complaint whether he intends to proceed on a theory of intentional discrimination or deliberate indifference for either claim.[7] Therefore, the Court will dismiss Counts II and III without prejudice so that Friedson may amend them to properly state a claim for compensatory damages, if he so wishes.

### B. § 1983 claim for failure to train (Count IV)

A plaintiff asserting a § 1983 claim against a government agency must show that the governing body itself caused his injury. <u>McDowell v. Brown</u>, 392 F.3d 1283, 1289 (11th Cir. 2004). To state a claim under § 1983, the plaintiff must show: (1) that his constitutional rights were violated; (2) that the government had a custom or policy that constituted a deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation. <u>City of Canton v. Harris</u>, 489 U.S. 378, 385 (1989).

Friedson alleges that it was the "policy of the Sheriff's Department to inadequately train, supervise[,] and discipline officers, regarding contact with hearing-impaired individuals, including the individual Defendant, Deputy Wallace, thereby failing to adequately discourage further constitutional

---

[7] Friedson's response states that he will proceed on a theory of deliberate indifference for both his ADA and RA claims. (Doc. 16 at 6-7).

7

violations on the part of the deputies." (Doc. 1 ¶ 47). The Sheriff allegedly knew encounters between officers and hearing-impaired persons were likely and that the "need to be able to handle and help hearing impaired individuals is . . . manifest and obvious. . . ." (Id. ¶ 43). Based on these failures, the Sheriff allegedly acted with "deliberate indifference to a known risk of constitutional deprivation to Plaintiff and similarly situated citizens." (Id. ¶ 45).

Friedson's § 1983 claim is insufficient. First, he fails to allege in Count IV what constitutional violation occurred. See Booth v. City of Roswell, 754 F. App'x 834, 837 (11th Cir. 2018) (citing Graham v. Connor, 490 U.S. 386, 394 (1989)) ("The first step in a § 1983 claim is to identify the specific constitutional right allegedly infringed."). Friedson vaguely alleges a "constitutional deprivation," (id. ¶ 45), and deprivation of "constitutional liberty interests," (id. ¶ 46), but never actually states the grounds of the constitutional violation.[8]

Moreover, Friedson fails to allege facts that should have placed the Sheriff on notice of the alleged failure to train. "The inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police came into contact." City of Canton, 489 U.S. at 388. To establish deliberate indifference, "a plaintiff must present some evidence that the

---

[8] It seems as if Friedson intends for the Fourth Amendment to be the basis for his § 1983 claim, as that is the only amendment cited in the complaint. (Doc. 1 ¶ 1).

municipality knew of a need to train and/or supervise in a particular area and the municipality made a deliberate choice not to take any action." Gold v. City of Miami, 151 F.3d 1346, 1350 (11th Cir. 1998).

Count IV is comprised of conclusory statements that the Sheriff was deliberately indifferent, but fails to provide facts describing any prior incidents that should have put the Sheriff on notice of a failure to train. See Gevarzes v. City of Port Orange, No. 6:12-CV-1126-ORL-37, 2013 WL 610456, at *6 (M.D. Fla. Feb. 19, 2013) (dismissing § 1983 claim by deaf plaintiff against City for failure to submit any "prior similar incidents tending to suggest a pattern of misconduct or any other facts demonstrating that a need for training or supervision was plainly obvious"). Friedson admits as much in his response. (Doc. 16 at 9). Accordingly, Friedson's § 1983 claim is due to be dismissed without prejudice.

**C. Claims brought against the Sheriff in his individual capacity**

The Sheriff argues that all allegations against him in his individual capacity should be dismissed. (Doc. 9 at 7). Friedson concedes that all claims against the Sheriff are against him in his official capacity only, rendering the Sheriff's argument moot. (Doc. 16 at 10).

Accordingly, it is hereby

**ORDERED:**

9

1. Defendant Sheriff David Shoar's Motion to Dismiss Plaintiff's Complaint (Doc. 9) is **GRANTED in part and DENIED in part**.[9]

2. Counts II, III, and IV of the complaint are **DISMISSED without prejudice**.[10]

3. Friedson shall file an amended complaint by **November 15, 2019**. Friedson shall state his damages requests in each count so it is clear which damages and fees/costs request is associated with which count.

4. The Sheriff shall file a response to the amended complaint by **December 3, 2019**. If the Sheriff files another motion to dismiss, Friedson shall file a response by **December 20, 2019**.

5. Deputy Wallace shall file an amended answer to the amended complaint by **December 3, 2019**.

6. The parties remain governed by the Case Management and Scheduling Order. (Doc. 18).

**DONE AND ORDERED** in Jacksonville, Florida the 28th day of October, 2019.

---

[9] The Sheriff requests that the Court dismiss "the Plaintiff's claims asserted against him in the Complaint," (Doc. 9 at 7), but he raises no substantive arguments against the false arrest claim (Count VI). Therefore, Count VI is sustained.

[10] Friedson may replead Counts II and III, consistent with this Order. However, regarding Count IV, the Court is skeptical that Friedson will be able to state a § 1983 claim against the Sheriff but does not prejudge the issue. If, during the course of discovery, Friedson thinks that he can sufficiently allege a § 1983 claim, he may file a motion for leave to amend the complaint.

TIMOTHY J. CORRIGAN
United States District Judge

sej
Copies:

Counsel of record